*Craig et al. v. Craig et al.*

No. 9624.

CRAIG ET AL. *v.* CRAIG ET AL.

HUSBAND AND WIFE.—*Real Estate.—Contract.—Jointure.—Antenuptial Agreement.—Rescission by Parol After Marriage.*—An antenuptial agreement in writing, duly acknowledged, whereby fair provision is made for the wife in case of widowhood, in consideration of which she agrees to forego all interest in his estate which would otherwise accrue by virtue of the marriage, such provision embracing, amongst other things, an estate for her own life in a tract of land described, to take effect upon his death, creates a jointure within the meaning of section 2500, R. S. 1881, and vested in her an estate in lands which can not be divested by parol, and a mutual agreement of the parties, by parol, after marriage, that the contract should not be enforced, can not annul it. R. S. 1881, section 2919.

From the Hancock Circuit Court.

*R. E. Smith* and *J. Hanna,* for appellants.

*D. Moss, R. R. Stephenson, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellees.

HAMMOND, J.—Action by the appellees, as the widow and daughter of Moses Craig, deceased, against the appellants, as the children and grandchildren of said decedent, by a former marriage, to obtain partition of real estate. The petition makes the proper averments as to the decedent being seized at the time of his death of the real estate in controversy, of his dying intestate and leaving the appellees and appellants as his only heirs. The widow claimed to own one-third of all the land in dispute. The appellants answered in two paragraphs, the first being the general denial. The appellees severally demurred to the second paragraph of the answer. The widow's demurrer was overruled, and she replied in four special paragraphs, to each of which the appellants demurred, but their demurrer was overruled and they excepted. The case was tried by a jury, resulting in a verdict in accordance with the allegations and prayer of the appellees' petition. An interlocutory decree was entered, directing partition; commissioners were appointed, who made and reported partition, and their report was confirmed by the court.

The appellants have assigned as error the overruling of their demurrer to the second and third paragraphs of the widow's reply to the second paragraph of their answer.

The second paragraph of the answer is as follows:

"And for a second and further answer to the plaintiffs' complaint, defendants say and admit that the plaintiff Julia A. Craig is the widow of Moses Craig, late of Marion county, and that the said Moses Craig was the father of defendants, except Nancy Clark and Moses Hamilton, who are the grandchildren of said Moses Craig, and that their father, Moses Craig, died seized of the property, both real and personal, acquired by him during the lifetime of their mother and before his marriage with the plaintiff Julia A. Craig, who was the widow of William Thomas, she, the plaintiff, having children by her former husband and property, which she had acquired by and during the lifetime of the said Thomas, and in view of the said marriage of Moses Craig with the plaintiff, they made the antenuptial contract which is herein set forth in the words and figures following, to wit:

"'This agreement made and entered into by Moses Craig, of Marion county, in the State of Indiana, of the first part, and Julia Thomas, of the same county and State, of the second part, witnesseth: That said Moses Craig and Julia Thomas being both of lawful age and unmarried, and being about to be joined in marriage, do contract, that is to say, during the continuance of such marriage, said Moses Craig hereby agrees, binds and obligates himself to furnish and provide for said Julia a suitable and comfortable home with him with all necessary and proper provisions, clothing, etc., suitable to her condition as his wife, and in case she should survive him (such marriage existing and (being) in full force at his death), then, and in that case, said Moses hereby agrees that the following described tract of land'" (here follows description of 80 acres of land) '"shall be set apart for the use and benefit of said Julia, who shall be entitled to the use and occupancy thereof, and to the rents, issues and profits thereof from the time of

Craig *et al. v.* Craig *et al.*

the death of said Moses for and during her natural life, unless she shall again marry, in which case the right to the use and occupancy of such tract of land, with the rents, issues and profits thereof shall terminate at the date of such marriage. It is also agreed by said Moses, as a further means of support to said Julia, should she survive him as aforesaid, there shall be set apart (should there be sufficient funds remaining of the personal estate of him, said Moses, after paying his just debts, with the costs and expenses of administering his estate by his executor or administrator) the sum of $1,000 in money, which shall be loaned out and kept at an annual interest, to be secured by proper notes and mortgage upon real estate, during the natural life of the said Julia, should she remain unmarried, or, in case of marriage, up to the date of such marriage, the annual interest accruing thereon, to be paid over to said Julia for her support and maintenance. Said Julia is to have no more or greater share of, or interest in, the estate of said Moses than as herein above provided. The real estate above set apart and the principal of said $1,000 shall revert to and be equally divided amongst said Moses's heirs. Said Moses further agrees that in the event of the death of said Julia before him, he is to have no portion of her estate, but that the same shall go to her heirs. Said Julia being the mother of three children by her former husband, William Thomas, deceased, two daughters aged, respectively, 16 and 13 years, and one son aged 11 years, it is hereby agreed that said Moses Craig is under no obligation to furnish a home or means of support or education for either of said children; that at as early a date as practicable said Julia shall put her said son to some suitable person to learn a trade or the art and business of farming, whereby he may be able to make a suitable support for himself. To all the foregoing the parties hereby agree, and in witness thereof, have hereunto set their hands and seals this — day of July, A. D. 1876.

(Signed) "'MOSES CRAIG. [SEAL.]
"'JULIA THOMAS. [SEAL.]'"

(Here follows certificate of acknowledgment before a justice of the peace.)

"Which contract and agreement was kept and in all things faithfully carried out and fulfilled by said Moses Craig during his lifetime, and up to the date of his death the same was in full force and effect; and that the plaintiff Julia A. Craig in good faith kept and fulfilled and carried out the same up to the death of said Moses, and after his death she caused the same to be recorded in miscellaneous record No. 4, on pages 119, 120 and 121, in the recorder's office of Marion county, Indiana; that said contract is and was of great benefit to said Julia, and the same made generous and ample provision for her support and maintenance during her natural life. Wherefore defendants allege that she, plaintiff, is precluded and estopped from demanding partition as in her petition alleged and demanded. Wherefore," etc.

The second and third paragraphs of said Julia A. Craig's reply to the above answer were as follows:

"2d. That during the lifetime of said Moses Craig the contract mentioned (in the second paragraph of the answer) was rescinded by the mutual consent of the parties thereto, and at the same time it was further mutually agreed by and between said parties that said contract should be cancelled and destroyed; that, by mistake and inadvertence, said petitioner and said Moses Craig neglected to cancel or destroy said contract during the lifetime of said Moses; that shortly after his death the administrator of his estate falsely and fraudulently represented to her, that as she was a second wife of said Moses, she was not entitled to receive any portion of his estate unless she caused said contract to be recorded, and thus acquired it by virtue of said contract; that relying on said representations, and at the time believing them to be true, and being utterly ignorant of her rights as such widow, and having no opportunity to take legal advice in the premises, she was thereby induced to have said contract recorded.

"3d. That after the execution of the contract mentioned in

said second paragraph of said answer, and during the lifetime of said Moses Craig, she, said petitioner, promised and agreed to and with the said Moses Craig, in the event she survived him, not to enforce the provisions contained in said contract for her benefit against his heirs, executors, administrators and assigns, in consideration whereof the said Moses Craig then promised and agreed to and with her, said petitioner, in the event he survived her, not to enforce the provisions therein contained for his benefit against her heirs, executors, administrators and assigns, and in consideration of which said promises and agreements, the said contract by the mutual consent of the parties thereto was rescinded and forever abandoned, and she, said petitioner, further says that, after the death of said Moses, and after the appointment of the administrator of his estate, at the special instance and request of said administrator, and without any consideration whatever being paid or promised her therefor, she caused said contract to be recorded in the recorder's office of said Marion county, but she expressly denies that she has in any way ratified or confirmed the said contract, or accepted the provisions therein made in her behalf since the death of said Moses Craig."

The contract of revocation set out in the second and third paragraphs of the reply, not being averred to have been in writing, is presumed to have been by parol. Overlooking other objections that might be urged against each of the above paragraphs of reply, we will consider a question involved in both, namely, whether the antenuptial contract set forth in the second paragraph of the answer could be annulled by a parol agreement made between the parties during the existence of the marriage relation. We have not been referred to, nor have we been able to find, any authority directly in point upon this question. Contracts between husband and wife were generally void at common law, but in some cases were upheld in equity. Story Equity, section 1372.

Section 36 of our statute of descents, being section 2500, R. S. 1881, is as follows:

Craig *et al. v.* Craig *et al.*

"Whenever an estate in lands shall be conveyed to a person and his intended wife, or to such intended wife alone, or to any person in trust for such intended wife, for the purpose of creating a jointure for such intended wife; or whenever, for the same purpose, a pecuniary provision shall be made for the benefit of the intended wife,—the same shall be a bar to the right or claim of such wife in lands of her husband: *Provided,* The intended wife, at the time of the creation of such jointure, signified, in writing endorsed upon or attached to the deed creating said jointure, her assent to receive the same in lieu of all right or claim of such wife in the lands of the husband."

The contract set forth in the second paragraph of the answer was a deed creating a jointure within the meaning of the above statute. There was a stipulation in the deed to the effect that the appellee Julia A. Craig was to receive the provision therein made for her in lieu of all right or claim to the other lands of her intended husband. She signed the contract with her intended husband, which was a compliance with the statute requiring her written assent. The subsequent marriage made the contract valid and binding upon both parties. It excluded and barred her marital rights in his property. The marriage conferred upon her such rights only in her husband's property as the contract provided for. But the rights thus acquired amounted to an interest in real estate of which she could not be divested by a parol contract unconnected with circumstances making such contract enforceable in equity. It does not appear from the appellee's reply that in consequence of the mutual agreement between her and her husband, attempting to revoke the antenuptial contract, she parted with or acquired any right whereby, if such parol contract of revocation is disregarded, she can not be placed *in statu quo.* From all that is disclosed in her reply, the marriage settlement can be adhered to, and she will be placed in no worse condition than she would have been, had the oral agreement of cancellation never been made.

We are of opinion that the contract set up by the appellants in the second paragraph of their answer was under the statute, section 2500, *supra*, a conveyance; that by such conveyance, on the marriage, the parties acquired or retained such interest in real estate as could not be disposed of or exchanged by a parol contract, such as is set forth in the appellee's reply, and that this interest in real estate could not legally be disposed of or exchanged except by deed of conveyance. Section 2919, R. S. 1881, provides that "Conveyances of lands, or of any interest therein, shall be, by deed in writing, * * * * * except *bona fide* leases for a term not exceeding three years." This section applies to an interest in real estate acquired by an antenuptial contract. The parol agreement, relied upon as cancelling that contract, is like that between a grantor and a grantee, after the delivery of the deed, to regard it as rescinded without destroying the deed. The agreement in such case, being void, would not have the effect to re-convey the land to the grantor, and the voluntary destruction of the deed would not have that result, except indirectly, where the deed was not on record, by destroying the grantee's evidence of title, for in such case, after consenting to the destruction of the deed, the rules of evidence would not admit proof of its contents by parol.

We think that the rights of the widow in the real estate of her deceased husband were concluded by the antenuptial contract. The court below erred in overruling the demurrer to the special paragraphs of the reply. Other errors are assigned, but these will not likely occur again, and need not be considered by us.

Judgment reversed, at the costs of the appellee Julia A. Craig, with instructions to the court below to sustain the appellants' demurrer to the special paragraphs of the reply, and for further proceedings in accordance with this opinion.

ON PETITION FOR A REHEARING.

HAMMOND, J.—Counsel for appellee Julia A. Craig ear-

nestly insist that the appellants' answer is not in the record, and that no question can, therefore, be made in this court as to the sufficiency of her reply to such answer. This same objection was made by appellee's counsel in their first brief; but after that brief was filed, and before the rendition of the principal opinion, the following agreement was filed in this court:

"State of Indiana, in the Supreme Court. Craig *et al. vs.* Craig *et al.* Appeal from the Hancock Circuit Court.

"It is hereby agreed that the answer, or paragraphs thereof, attached to the transcript in the above cause by the appellants, is a correct copy of the original, and shall be considered as part of the transcript.

(Signed)    "Moss & Stephenson,

"Attorneys for appellees.

"Robert E. Smith,

"Attorney for appellant."

The answer referred to in the above agreement was, and still is, attached to the transcript. Defects in a transcript may be cured or waived by agreement of parties. Under the foregoing agreement, we were authorized to regard, and did regard, the answer as part of the record the same as if it had been properly copied by the clerk in the transcript at the place designated for it. We presume that the filing of the above agreement has escaped the memory of appellee's counsel, for they would certainly not, having it in their mind, ask this court to disregard the appellants' answer.

The petition for a rehearing is overruled.