## CLOW ET AL. *v.* BROWN ET AL.

[No. 5,206.   Filed November 29, 1904.   Rehearing denied March 10, 1905.   Transfer denied January 24, 1906.]

1. JUDGMENT.—*Issues.*—*Debts.*—*Fraud.*—*Liens.*—Where a complaint alleged that a certain deed was fraudulent and void as to the plaintiffs, creditors of the grantor, and the answer was a general denial, and a second paragraph which showed that such deed was made to the grantee as a security for a certain debt, a decree declaring a lien for defendant in such sum and for the sale of such property subject to such lien is within the issues. p. 179.

2. CONTRACTS. — *Postnuptial.*—*Consideration.*—*Marriage.*—Marriage alone can not constitute a valuable consideration for a postnuptial contract.   p. 182.

3. SAME. — *Postnuptial.* — *Consideration.* — *Antenuptial.* — *Discharge.*—Where a man entered into an antenuptial contract with his intended wife, whereby she released any claim to his estate in the event she survived him and agreed to receive from his estate in lieu of her statutory rights $10,000, her release of such antenuptial contract by a postnuptial contract whereby she accepted a lien upon his property for a much smaller sum in full satisfaction thereof, is founded upon a valuable consideration.   p. 182.

4. HUSBAND AND WIFE. — *Contracts Between Themselves.* — A husband may contract directly with his wife and *vice versa* under modern statutes.   p. 185.

5. HUSBAND AND WIFE.—*Descent.*—*Postnuptial Contracts.*—Where an antenuptial contract fixing the rights of property is abrogated by a postnuptial contract giving the wife a certain sum for the abrogation of such antenuptial contract, which she accepts, the husband at her death inherits under the law.  p. 186.

6. ASSIGNMENT FOR BENEFIT OF CREDITORS.—*Husband and Wife.* —*Preferences.*—The husband may prefer his wife in an assignment for the benefit of his creditors, where she agrees to release his antenuptial contract to pay her $10,000 out of his estate as her share thereof as surviving widow, in consideration of a certain sum which is not grossly unjust to his creditors.  p. 186.

From Montgomery Circuit Court; *Joseph M. Rabb,* Special Judge.

Suit by James B. Clow and others against James S. Brown and others.  From a decree for part of their claim, plaintiffs appeal.  *Affirmed.*

*E. C. Snyder* and *S. C. Kennedy,* for appellants.

*Crane & McCabe* and *Thomas A. Foley,* for appellees.

BLACK, C. J.—The appellants brought suit against the appellees, John S. Brown, Mary V. Brown and Fannie B. Coddington, upon a judgment rendered by the circuit court of Clinton county, January 9, 1900, in favor of the appellants against the appellee John S. Brown, and to set aside, as fraudulent, as against his creditors, certain conveyances of real estate, situated in Montgomery county, to the other appellees, and a mortgage of real estate in that county to the appellee Mary V. Brown, such conveyances and mortgage having been executed by appellee John S. Brown September 9, 1899.  Issues having been formed, the cause was tried by the court and special findings were rendered.  The court's conclusions of law are questioned here.

The court stated the facts substantially as follows:  In 1854 John S. Brown was a married man, his wife being the daughter of John T. Blair, who in that year conveyed to John S. Brown certain real estate in the town of Crawfordsville, for the consideration of $1,200, of which the sum of $200 was paid by the grantee to the grantor, and

the remainder of the amount of the consideration was treated by the grantor as an advancement to his daughter, wife of the grantee. Afterward this property was by the grantee exchanged for certain real estate in Crawfordsville, which, for convenience, we will designate as tract A, for which Brown, in addition to the property so received from his father-in-law, gave the sum of $500, taking the title to tract A in his own name. He occupied it, as he did the real estate which he so exchanged for it, as his own property, and he never expressly agreed to pay said sum of $1,000 either to his wife or to his father-in-law. Afterward Mrs. Blair, the mother of Brown's wife, died intestate at Montgomery county, and he became the administrator of her estate; and as such he, in 1879, made his final settlement of the estate, in which it was shown that there was due to his wife, daughter of the decedent, as an heir of the intestate, and distributee of the estate, $1,275, for which sum she executed to her husband her receipt, and he at the time executed to her his promissory note for that sum, with interest at the rate of eight per cent per annum. Afterward, in September, 1882, she was stricken with fatal illness, at which time he and she had two children, one being the appellee Fannie B. Coddington, the other being a son, James Brown. In view of her probable death, and for the purpose of dividing her property between these children, she requested her husband to execute to the children his notes for the sum so due her from him, and pursuant to this request he executed his note to the appellee Fannie B. Coddington for $750, and his note to the son for the same amount, the sum of the two notes being the amount then due as principal and interest upon the note which theretofore he had so executed to his wife, in satisfaction of which the two notes were given. Afterward, the mother of these two children, wife of appellee John S. Brown, died intestate, and no administration was had of her estate. Thereafter the appellees John S. Brown and Mary V.

Brown (then Mary Vance), in contemplation of their marriage, entered into a written contract, signed and sealed by them respectively, in duplicate, December 17, 1886, the body of which contract was as follows:

"This article of agreement by and between John S. Brown and Mary D. Vance, both of the city of Crawfordsville, State of Indiana, witnesseth, that said parties now having in contemplation a marriage with each other, do hereby agree as follows: Said parties do hereby mutually agree to renounce and waive, and they do hereby renounce and waive, any and all rights of inheritance each may have under the law of the State of Indiana, by reason of said proposed marriage, to the property of the other; and it is further agreed that in case said Mary D. Vance shall survive said John S. Brown, that upon his death she shall be paid the sum of $10,000 in cash out of the estate of said Brown, this sum to be paid in consideration of her waiver in the estate of said Brown as above set forth."

At the time of the making of this contract Mary D. Vance was in good health and in the fortieth year of her age, and John S. Brown was in good health and was sixty-three years old. He was then in prosperous circumstances, and worth from $40,000 to $60,000. He was the owner of real estate of the probable value of $30,000, and the court found that the contract was a just and reasonable provision for his wife, in his circumstances at that time. Pursuant to the contract, the parties thereto were duly married December 21, 1886. Subsequently to this marriage, and long prior to September 9, 1899, John S. Brown had incurred a liability to the appellants for a statutory penalty growing out of his relations with the Crawfordsville Water-Works Company, as a director thereof, and he and others had been sued by the appellants on account of such liability, and the action had been pending in the courts of Montgomery and Clinton counties since

August, 1889, and the proceedings finally culminated in a judgment duly rendered by the Clinton Circuit Court against John S. Brown and the estate of Robert B. F. Pierce for $6,203.82, January 9, 1900. At that time the estate of Pierce was insolvent, and at no time has it had assets out of which any part of the judgment could be collected, which judgment is still in full force and wholly unpaid.

James Brown died intestate, leaving as his sole heirs at law his father, John S. Brown, and his sister, Fannie B. Coddington, and John S. Brown settled up the decedent's estate without an administrator. After payment of the liabilities of the estate, there remained in his hands, belonging to the estate, $560, one-half of which was due to John S. Brown and the other half to Fannie B. Coddington. The amount thus due to the latter was never paid to her, but remained in the hands of John S. Brown, without any demand being made for it by her prior to the execution of the deed, hereinafter mentioned, from John S. Brown to Fannie B. Coddington. September 9, 1899, he was the owner in fee simple of certain real estate in Montgomery county, described in the finding, being lots numbered seventeen and twenty in a certain addition to Crawfordsville, which were of the value of $3,200, and subject to a mortgage lien amounting to $1,953.57; also a tract, which we will, for brevity, designate as tract B, worth $2,800, and subject to a mortgage lien of $151, also tract A, above mentioned, worth $10,000, and a portion thereof described, which may be designated as the west part of tract A, was subject to a mortgage of $3,800 in favor of a bank named, which bank also held as security for such debt a mortgage on another tract of land in that city which John S. Brown then owned, known as the "cooper-shop property," of the value of $3,200, and subject to no other encumbrance. The bank also held as collateral security for the same debt an insurance policy on

the life of John S. Brown for $4,000, which was also pledged to the bank to secure the payment of all sums advanced or that might be advanced by it in payment of premiums on the policy and any other debt that Brown might then owe the bank, which had then paid premiums amounting to $1,343; and it was necessary, in order to keep the policy alive, to pay as premiums annually $286, Brown being then seventy-six years of age. Said real estate was also encumbered by a mortgage executed by Brown to Crane & Anderson, to secure a debt of $618. Brown also owned in fee simple lot number five in a certain addition to that city, of the value of $1,400, subject to a mortgage lien of $761.58, and he was and still is the owner in fee simple of other real estate in that city of the value of $2,000, subject to valid liens amounting to $900. He also owned personal property of the value of $300, and was and is a householder of this State. He had no other property subject to execution, and has not since had sufficient property subject to execution to pay his debts, and he has been insolvent at all times since that date. He was then justly and legally indebted to his daugher, the appellee Fannie B. Coddington, in the sum of $1,916.50. For the purpose of securing to her the payment thereof, and at the same time placing the property hereinafter mentioned beyond the reach of the appellants on execution or other legal process to satisfy their demands against him, in case they should recover judgment against him in the then-pending litigation, Brown executed to his said daughter the deed mentioned in the complaint herein, by which he conveyed to her, for the expressed consideration of $1,875, tract A and lot number five above mentioned. At the time of the execution of this deed, and for several years prior thereto, Fannie B. Coddington lived in the state of Nebraska, and she had no notice or knowledge of her father's financial condition. The deed was drawn up and signed and acknowledged in Crawfordsville, Indiana, without con-

sulting with Fannie B. Coddington, and without request from her, and was transmitted by Brown through the mails to her at Kearney, Nebraska. It was received by her as security for the payment of the sum due her from her father. Brown continued to use, occupy and control the property after the execution of the deed as he had done before. The deed was returned by Fannie B. Coddington to her father with direction to have it put on record, and it was duly recorded in the recorder's office of Montgomery county, October 19, 1899.

John S. Brown, September 9, 1899, executed to his wife, appellee Mary V. Brown, a deed of conveyance for lots numbered seventeen and twenty and tract B above mentioned, and a mortgage on the eastern and greater portion, described, of tract A. This mortgage was given to indemnify the mortgagee from the payment of a balance of $155.30, due to a bank named, and secured by mortgage on the property that day conveyed by Brown to his wife, and also to secure and indemnify her against the payment of a debt of $1,500, and interest thereon, secured by mortgage in favor of one Thomas on the property so conveyed to her. The conveyance and mortgage were so executed by John S. Brown, and were accepted by Mary V. Brown, "in lieu and in satisfaction of" the antenuptial contract above mentioned, and were so executed by John S. Brown in view of the fact of his insolvency, and with full knowledge of both parties thereto of his financial condition at the time. The court found that there was due Fannie B. Coddington, upon the indebtedness of her father to her, which it was intended to secure by his said deed to her, $2,323.70, and that there was due the appellants on their judgment $7,425.

The court stated as conclusions of law: (1) That the deed and mortgage executed by John S. Brown to Mary V. Brown are valid and effectual to convey to her the title of the premises described in the deed, and to indemnify

her against the liabilities described in the mortgage, free
from the demands of the appellants or other creditors of
John S. Brown; (2) that the deed executed by John S.
Brown to Fannie B. Coddington is void and ineffectual in
conveying the title to the premises therein described to her,
as against the demands of the appellants as creditors of
John S. Brown, but that she, under that deed, is entitled
to hold a lien upon the premises, as against such demands,
for $2,323.50, with interest from the date of the special
findings; (3) that the appellants are entitled to have the
premises described in the deed of John S. Brown to Fannie
B. Coddington, and such other real estate as John S. Brown
owned, subject to execution, sold to pay and satisfy their
debt, freed and discharged from any claim thereon of Mary
V. Brown as the wife of John S. Brown, but subject to all
prior valid liens existing against the same.

It is claimed on behalf of the appellants, with reference
to appellee Fannie B. Coddington, that as the answers filed
by her were answers in bar of the action, and as she
1.   filed no cross-complaint and asked no affirmative
relief, the finding that she held a lien upon the real
estate conveyed to her was outside the issues made by the
pleadings, and should be disregarded.

The complaint alleged that the conveyance to Fannie B.
Coddington was fraudulently made without any valuable
consideration, and that she at the time knew that it was
made without valuable consideration and for the purpose
of enabling John S. Brown to cheat, delay and defraud his
creditors, and especially the appellants.   The separate
answer of Fannie B. Coddington was in two paragraphs,
the first being the general denial.   In the second paragraph
she admitted that September 9, 1899, John S. Brown was
the owner of real estate described—being that described
in his deed of conveyance to her of that date—and that on
that day he and his wife executed a deed conveying it to
Fannie B. Coddington; and it was alleged that this deed

was executed to her by him on account of an indebtedness then due and owing by him to her; that he was indebted to her on account of moneys then due and owing by him to her, and the conveyance was made by him to her for the purpose of securing her in the payment of such debt, and for no other purpose; and she denied that it was executed by him for the purpose of defrauding, hindering or delaying the creditors, including the appellants, and alleged that it was executed in good faith and for the purpose of securing the payment of said debt.

The second paragraph did not contain an express statement that it was pleaded as a defense in part. It was the separate answer of Fannie B. Coddington alone, and as such it was sought thereby to defend against so much of the cause of action stated in the complaint as affected her interest in the real estate created by the conveyance to her, attacked by the complaint as having been executed to defraud the creditors of the grantor. It denied that the conveyance was executed for such purpose, and showed its true character—that it was a deed of conveyance executed as a security for the payment of a preëxisting *bona fide* debt, and therefore a mortgage given by way of preference of a creditor. It did not contain a prayer for the foreclosure of the mortgage lien, but it asserted, in effect, the existence of such lien. It did not seek to present any reason why the real estate should not be subjected to sale as the property of the grantor for the payment of the judgment of the appellants, but it stated facts which, if true, as they were found to be by the court, should require that such sale be made subject to the mortgage lien. The complaint treated the deed to Fannie B. Coddington as one whereby it was intended to convey the absolute title, and sought to set it aside as fraudulent, so that the real estate might be subjected to the payment of the judgment, free from all claims based upon that deed of conveyance. The answer opposed such demand of the appellants by showing that the deed of con-

veyance created a *bona fide* mortgage lien, and, while not controverting the right of the appellants to have the real estate subjected by sale to the payment of the judgment, showed that the appellee Coddington, the defendant separately answering, had a superior mortgage lien. This defendant had no interest in disputing generally the right of the appellants to have the real estate sold upon their judgment. She was only interested in asserting and protecting her lien, and her second paragraph of answer, the sufficiency of which has not been questioned here, appears to have been treated as having been pleaded for such purpose, and it would seem to be but justice to all the parties that it should be so treated in this court.

As against the appellants, seeking to set aside the conveyance as one made and accepted to hinder, delay and defraud the creditors of the grantor, it was not outside the issues, and beyond the province of the court trying them, to find that the conveyance was executed as a security for a debt, and, because of this and the other facts found, constituted, as against the appellants, a lien upon the real estate. The court did not in its conclusions of law declare that the grantee was entitled to a foreclosure of her lien. It held that the appellants were entitled to have the land sold subject to the lien. This was all they were entitled to as against the appellee Fannie B. Coddington. They had not established their claim that the deed was invalid because of fraud against creditors. It was proper for the court to find and declare the true character of the conveyance as a security for a debt, constituting a lien on the real estate. If the conveyance was executed as a security for a *bona fide* demand—as a preference of a preexisting debt not voidable for fraud against creditors—this, we think, was a sufficient reason why, under the answer of general denial, the appellants should not recover greater relief than that given them as against Fannie B. Coddington.

There is somewhat greater difficulty in determining the question in relation to the postnuptial conveyance and mortgage from Brown to his wife. It is contended on behalf of the appellants that the antenuptial contract between them was so framed that it did not make Brown the debtor of his wife, and that they could not, as against the appellants, make a postnuptial settlement of that contract, except in accordance with the terms of the contract itself. If it were necessary to refer to the marriage itself as the consideration for the postnuptial conveyance and mortgage, it is plain that the conveyance and mortgage must be regarded as voluntary. The irrevocable marriage union could not constitute a valuable consideration for a subsequent agreement of the parties thereto.

But if the execution of the conveyance and mortgage may be regarded as having a valuable consideration other than the marriage, and as being a preference of a preëxisting debt of the husband to the wife, then, under the facts shown by the court's finding, the conveyance and mortgage must be upheld against the attack of the husband's creditors.

In *Reade* v. *Livingston* (1818), 3 Johns. Ch. 481, 8 Am. Dec. 520, it was said: "The settlement was a voluntary one. There was no portion advanced by or on behalf of the wife, nor was it founded on any antenuptial contract duly ascertained, or on any other valuable consideration." The chancellor thus indicates what is necessary to support a postnuptial settlement.

A postnuptial settlement, if not shown to be made pursuant to and in compliance with a valid antenuptial agreement therefor, must, as against existing creditors, be regarded as voluntary, unless founded upon a valuable consideration other than the marriage. See *Reade* v. *Livingston, supra; Lavender* v. *Blackstone* (1676), 2 Lev. 146.

In *Saunders* v. *Ferrill* (1840), 1 Ired. 97, 102, it was said: "Valid antenuptial contracts will undoubtedly sup-

port a settlement made after marriage in conformity to them. There is both a moral and an equitable obligation, which render the articles a good consideration for the settlement. But without such articles, a postnuptial settlement is voluntary and void under the Stat. 13 Eliz. (see 1 Rev. Stat. Ch. 50, §1), as has long been settled. So it necessarily must be, when by the settlement the husband secures to the wife or issue of the marriage more than by the articles he engaged." See *Maguire* v. *Nicholson* (1818), Beatty 592.

In *Magniac* v. *Thomson* (1833), 7 Pet. *348, *393, 8 .L. Ed. 709, it was said by Story, J.: "Nothing can be clearer, both upon principle and authority, than the doctrine, that to make an antenuptial settlement void, as a fraud upon creditors, it is necessary that both parties should concur in, or have cognizance of, the intended fraud. * * * Marriage, in contemplation of the law, is not only a valuable consideration to support such a settlement, but is a consideration of the highest value, and from motives of the soundest policy, is upheld with a steady resolution. The husband and wife, parties to such a contract, are, therefore, deemed, in the highest sense, purchasers for a valuable consideration."

The wife may, under such articles, become a creditor of her husband upon his undertaking therein to make an investment of money in her behalf,. and a delivery of notes in part performance of the articles was upheld against other creditors of the husband. *Magniac* v. *Thomson, supra.*

In *Reade* v. *Worthington* (1862), 9 Bosw. 617, 628, it was said that there is no "principle which puts a contingent liability beyond the possibility of being protected."

In *Rider* v. *Kidder* (1805), 10 Ves. (Sumner's ed.) *360, under a covenant upon marriage by the husband with the trustees, in case his wife should survive him, to pay her a sum of money, it was held that she was a creditor within the statute of Elizabeth against fraudulent convey-

ances, as against a fraudulent conveyance made by him to a third person, in a suit to set aside the fraudulent conveyance brought after his death by his widow as executrix.

In *Blow* v. *Maynard* (1830), 2 Leigh 29, Carr, J., gave the subject of postnuptial settlements an examination, cited a number of cases, and said, that the giving up of an interest in the settler's estate will support such a settlement. "The cases," he said, "also show, that not only the relinquishment by the wife, of a certain and fixed interest in her husband's estate, but also of a contingent interest, will support a postnuptial settlement, where there is no badge of fraud; as the giving up her interest in a bond, though contingent. 1 Eq. Ca. Abr. 19; [*Ward* v. *Shallet* (1750),] 2 Ves. Sr. 16. So, likewise, the releasing her jointure or dower. [*Ball* v. *Burnford* (1700),] Prec. Ch. 113; [*Scot* v. *Bell* (1673),] 2 Lev. 70, 147; [*Cottle* v. *Fripp* (1691),] 2 Vern. 220."

In the case last cited a husband had settled on his wife a jointure issuing out of certain real estate. Later the wife joined the husband in a sale of that real estate, "and in consideration thereof, and in lieu of her jointure," the husband gave a certain bond in her favor, which was upheld as against a subsequent creditor of the husband.

In *Scot* v. *Bell, supra,* a wife joined in an alienation of her jointure, and had another made the same day. It was held that the new settlement was not voluntary. It was said by Hale and the court that the second settlement was not void as to a subsequent lease made by the husband, "for the old settlement being destroyed, and the new made the same day, an agreement by him to make the new settlement, in consideration the wife would pass the fine and bar the old settlement, shall be intended, and the consideration shall extend to all the uses of the new settlement; for it shall not be presumed that the wife would have parted with her estate by the old settlement, unless the baron would make the same provision for her and her issue by

the new." In that case the lands in the new settlement were said to be almost of double value to those in the first settlement, yet by direction of the court the jury gave their verdict sustaining the new settlement.

In *Ward* v. *Shallet, supra,* a wife had a contingent interest under a bond given by her husband on the marriage. She agreed to part with that interest upon her husband's making another settlement upon her. It was said by the lord chancellor that the parting with her contingent interest under the bond was a clear consideration; that a contingent interest may be a consideration as well as a certain interest; and that the wife, insisting on the benefit of it, was barred from any claim under the bond.

By the terms of the antenuptial contract, Brown and his prospective wife, in contemplation of the marriage, renounced and waived all the rights of inheritance of either of them under the law by reason of the marriage, and agreed that if the wife should survive the husband, she upon his death should be paid $10,000 in cash out of his estate, in consideration of her said waiver in his estate.

The conveyance and mortgage were executed by the husband and accepted by the wife "in lieu and in satisfaction of the antenuptial contract."

They were not executed pursuant to the antenuptial contract, or by way of carrying into effect any contract made in consideration of the marriage; nor can the marriage be regarded as entering into the consideration for the conveyance and mortgage. Under our modern statutory system, the husband and wife could contract with each other without the intervention of a trustee. By the postnuptial settlement, if valid, the antenuptial contract was abrogated in consideration of the new settlement, and all the rights and obligations of the parties, respectively, created by the earlier contract, were set aside. The husband was freed from any obligation under that contract for the payment of money to the wife out of his

estate, and was restored to any rights in her property renounced and waived thereunder, while her renunciation and waiver therein of rights of inheritance by virtue of the marriage were also abrogated, for the new settlement was in lieu of the old contract and in satisfaction of it, and not merely of the contingent promise therein. It does not appear what property, if any, the wife owned, other than that obtained in the postnuptial settlement. The

5. property which she thus acquired, and any other real estate owned by her, or of which she might afterward become seized, would be held by her subject to the rights of a husband in the property of his wife under the law.

If any advantage of value was lost by the wife or gained by the husband through the abrogation of the old contract, it can not be said that there was not a valuable consideration for the new contract.

While a contingent indebtedness, or obligation to pay upon a contingency, is not for some purposes to be regarded as a present debt, yet, under the authorities, such

6. a contingent liability as is here involved may be preferred by the debtor in failing circumstances. We have no means of determining that the consideration for the conveyance and mortgage was so grossly inadequate as to invalidate them at the suit of creditors.

We do not find any substantial ground of complaint on the part of the appellants against the conclusions of law.

Judgment affirmed.