## MALLOW *v.* EASTES ET AL.

[No. 22,346. Filed February 19, 1913.]

1. PLEADING.—*Complaint.—Requisites.—Avoiding Anticipated Defense.*—In order to be good, a complaint, in which an attempt is made to anticipate a defense, must state facts sufficient to avoid the anticipated defense. p. 270.

2. PARTITION.—*Complaint.—Anticipating Defense.*—Where an intestate, prior to his marriage to his second wife, had entered. into an agreement with her by the terms of which each agreed that upon the death of the other neither should share in the property of the other, in an action brought by his children by the former wife against the widow and their half-brother for partition, it was necessary to plead such fact, even though it was matter in anticipation of a defense, since one of the objects of the action was to determine that such widow had no interest. p. 270.

3. PARTITION.—*Complaint.—Sufficiency.—Antenuptial Contracts.— Necessity of Incorporating in Complaint.*—In an action by certain heirs at law of an intestate against his widow and their half-brother for partition, the complaint, wherein plaintiffs claimed that the widow was not entitled to any interest in the land because of the provisions of an antenuptial contract, was not insufficient because such contract was not set out, since such contract was not the foundation of the action. p. 270.

4. HUSBAND AND WIFE.—*Antenuptial Contracts.—Consideration.*— Where by the terms of an antenuptial contract the parties agreed that upon the death of the other neither should share the property of the other, and in lieu of the wife's participation in his estate the husband was to provide a life estate for the wife in certain real estate specifically described, the marriage itself, as well as the release by each of all interest in the property of the other, was a sufficient consideration for the agreement so that the subsequent conveyance of the land in which the wife was to have a life estate, did not work an entire failure of the consideration. pp. 272, 275.

5. EVIDENCE.—*Presumptions.*—It is presumed that one does that which is to his interest and that he does not act against his interest. p. 273.

6. HUSBAND AND WIFE.—*Antenuptial Contracts.—Consideration.— Presumptions.*—Where a wife joined her husband in the conveyance of land in which, pursuant to an antenuptial contract, she was to have a life interest, it must be presumed that she joined in the conveyance for a valuable consideration. pp. 273, 277.

7.  HUSBAND AND WIFE. — *Antenuptial Contracts. — Rescission. — Consideration.*—The existence of the marriage relation alone is not sufficient to give rise to a consideration for the rescission of an antenuptial contract by which the husband agreed to provide a life estate for his wife in certain described real estate, on the grounds both of want of consideration and of public policy. p. 274.

8.  HUSBAND AND WIFE.—*Antenuptial Contracts.—Release of Interest Created.—Parol Agreement.*—An interest created under an antenuptial agreement cannot be barred or released by a postnuptial parol agreement. p. 274.

9.  HUSBAND AND WIFE.—*Antenuptial Contracts.—Construction.*— A doubtful or ambiguous antenuptial contract, capable of more than one construction, will receive a construction most favorable to the wife. p. 274.

10.  HUSBAND AND WIFE.—*Antenuptial Contracts.—Validity.—Effect.*—An antenuptial contract, fairly entered into, will be upheld even though the effect be to leave the surviving wife no property interest, or an interest much less than that conferred upon widows by statute. p. 274.

11.  HUSBAND AND WIFE.—*Antenuptial Contracts.—Conveyance of Land.—Specific Performance.*—An antenuptial contract providing that the husband shall convey to the wife a life estate in certain of his lands, either by deed or by will, and that neither shall otherwise share in the estate of the other, though executory in form, passes an equitable interest in the land to the wife upon the marriage so as to entitle her to specific performance. p. 275.

12.  HUSBAND AND WIFE.—*Antenuptial Contracts.—Construction.— Rescission.*—An antenuptial contract, providing for the transfer to the wife of a life estate, either by deed or will, in certain lands of the husband, and that neither party should otherwise share in the estate of the other, not being entire as to consideration, became partly executed by the marriage, and could not be rescinded because of the impossibility of placing the parties in *statu quo.* p. 276.

13.  HUSBAND AND WIFE.—*Antenuptial Contracts.—Modification.— Effect.*—Where an antenuptial contract provided for the transfer to the wife of a life estate, either by deed or will, in certain described lands of the husband, and that neither party should otherwise share in the estate of the other, and after the marriage the wife joined the husband in the conveyance of such land to another, and the husband appropriated the entire consideration and died without making any other provision for his wife, the conveyance in which the wife joined operated as a modification of the contract, and the burden of showing the consideration for the wife's joining in such conveyance being on the heirs at law of

decedent, who were seeking to prevent the wife's participation in the partition of his other real estate, the court could not, in the absence of such proof, determine as a matter of law that such wife was only entitled to the present value of her life estate in the consideration received by decedent for such conveyance. p. 277.

From Huntington Circuit Court; *S. E. Cook,* Judge.

Action by Rosella E. Eastes and others against Lavina E. Mallow and another. From an adverse judgment, the defendant Lavina E. Mallow appeals. *Reversed.*

*Watkins & Butler,* for appellant.

*James C. Branyan, John S. Branyan, Wilbur E. Branyan* and *L. L. Simons,* for appellees.

MYERS, C. J.—Appellees instituted this action for partition of real estate against appellant, and her son by a second marriage with the father of appellees. The complaint alleges the death of Henry Mallow, seized of 183 acres of land described; that appellant is a second wife by whom Henry Mallow had one son, who is made defendant; that the four plaintiffs were the heirs at law of said Henry Mallow, and that the said Henry Mallow prior to marriage, entered into an antenuptial agreement with appellant, not set out or made an exhibit, or its terms alleged, except that by its terms each agreed that upon the death of the other neither should share in the property of the other; that they were married and lived together as husband and wife until his death, and that the antenuptial contract was not changed or modified; that she wrongfully claims some interest in such real estate but her claim is unfounded; that Henry Mallow left a personal estate of the value of $2000, and an indebtedness of $500; that by reason of the foregoing facts, his widow has no interest in the real estate, and that it is the property of the five children; that she has been and is now the owner of eighty acres of land; that the real estate sought to be partitioned is indivisible, etc., and sale is prayed. A demurrer to this complaint for want of sufficient facts was

overruled, and this ruling is challenged on the ground that it anticipates the defense, and does not state facts sufficient to avoid a defense.

It is true that where an attempt is made in a complaint to anticipate a defense, such complaint in order to be good must state facts sufficient to avoid the antici-

1. pated defense. *Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 328, 82 N. E. 52, 84 N. E. 540; *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 69 N. E. 138, 63 L. R. A. 948; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 32 N. E. 319, 20 L. R. A. 400; *Latta* v. *Miller* (1887), 109 Ind. 302, 10 N. E. 100; *Morgan* v. *Lake Shore, etc., R. Co.* (1892), 130 Ind. 101, 28 N. E. 548; *Sutten* v. *Todd* (1900), 24 Ind. App. 519, 55 N. E. 980; *Town of Andrews* v. *Sellers* (1894), 11 Ind. App. 301, 38 N. E. 1101.

2. And such pleading is permissible, and sometimes necessary. *Lake Erie, etc., R. Co.* v. *Holland, supra.* The case before us is such a case. Except for the allegations thus made, the facts alleged would have disclosed an interest in the widow, when one of the objects of the action was to determine that she had no interest.

It is also urged that the complaint is bad because the antenuptial contract is not set out. It was not the foundation of the action; whatever interest appellees had, did

3. not arise under or by virtue of the contract, but by operation of law as heirs. It might be enlarged, or reduced, depending upon the antenuptial contract being in force or not in force, and admissible as an item of evidence, but not as the foundation of the action. Some interest in appellees would be shown by the averments, aside from the contract, sufficient to withstand a demurrer. *Bower* v. *Bowen* (1894), 139 Ind. 31, 38 N. E. 326; *Jewett* v. *Perrette* (1891), 127 Ind. 97, 26 N. E. 685; *Black* v. *Richards* (1884), 95 Ind. 184; *Shetterly* v. *Axt* (1906), 37 Ind. App 687, 76 N. E. 901, 77 N. E. 865. Appellant filed an answer in sworn general denial, and an affirmative answer, not material to

be considered here, and she also filed a cross-complaint against the plaintiffs and her son and codefendant, asking partition to her, of one-third the lands owned by Henry Mallow at his decease.

The evidence shows that on February 23, 1893, in contemplation of marriage, said Henry Mallow and appellant, each having children by a previous marriage, entered into an antenuptial agreement, by the terms of which among other things, each relinquished any and every statutory or other right in and to the property of the other, Mallow agreeing "to provide by proper testamentary bequest or other good, and sufficient conveyance" to appellant, certain specifically described real estate, during her natural life, remainder to his children. Marriage followed the execution of the contract, and a son was born of this union, who survived Henry Mallow, as did appellant. Mallow, his wife joining him in the conveyance, in 1895, sold and conveyed the real estate which he had agreed to give her for life, for the sum of $1100, its fair value at that time, and he received the proceeds. The son was born in 1896. Henry M. Mallow died in 1907 intestate as to all his property. It does not appear what property either of them had at the time of the marriage, or at the time they conveyed away the property in 1895. There was evidence fixing appellant's expectancy in 1908 at 20 years.

Upon this state of the evidence appellant tendered and requested the following instruction: "You are instructed that if there was an antenuptial contract between Henry M. Mallow and Lavina E. Wiley, and that the same was the one read in evidence, and if one of the considerations of said contract was that Henry M. Mallow should deed his wife the property described in such contract, or provide for her by will, and if after their marriage, the said Mallow and his wife joining, he conveyed away the property that Lavina E. Wiley (Mallow) was to have and appropriated the money to his own use, and made no provision in lieu thereof, by

deed or will during his life, then the consideration has failed, and you should, if you find these facts to be true, find that the defendant, Lavina E. Mallow, is entitled to one-third in fee simple of the property described in the complaint and in her cross-complaint." It was refused, and an exception reserved.

The court of its own motion gave the following peremptory instruction: "The court instructs you, gentlemen of the jury, that you find for the plaintiffs, and that the defendants, except Lavina E. Mallow, are the owners in fee simple of the lands in dispute as tenants in common, in equal shares, and that the same cannot be divided without damage to the owners, and that the same ought to be sold; that the defendant Lavina E. Mallow, is the owner of a life estate in $1100.00, proceeds of the life estate in the antenuptial agreement, and that she is now fifty-two years of age. I have prepared a verdict for you to sign." To the giving of which instruction no exception was reserved.

Upon the motion for a new trial, one of the causes is that the verdict is contrary to law, another that the court erred in refusing appellant's instruction, and another that the verdict is not sustained by sufficient evidence. The court rendered judgment in favor of appellant, fixing the value of her life estate in the $1100, the price at which the land sold, which was provided by the antenuptial agreement should go to her, at $673.71, and partitioned the land of which her husband died seized among his children.

4. The instruction requested by appellant was erroneous.

The marriage itself was a part, and a sufficient consideration for the antenuptial agreement, as was the release of all interest in the property of the other party, hence the land which was to go to appellant under the agreement, was not the sole consideration for the antenuptial contract, and by conveying it away, the consideration for the contract had not entirely failed, but the important part of the subject-matter of the contract had been thereby destroyed, so far

as the parties were concerned.  Whether the contract had been rescinded as to property matters, by valid mutual agreement, is quite another question.  It will be presumed

5. that one does that which is to his interest, and not to act against his interest.  Lawson, Presumptive Ev. (2d ed.)  364.

Had the wife not joined in the conveyance of the property she was to have under the contract, it might be that the husband by putting it beyond his power to carry out his

6. contract, had so far abrogated the contract as to let the wife in to share in his estate, even though he left sufficient estate to pay the value of her life estate in the property parted with, for the reason that it might not have been sufficient to relegate her to the condition of a creditor of his estate.  *Pierce* v. *Pierce* (1876), 9 Hun 50; *Zachmann* v. *Zachmann* (1903), 201 Ill. 380, 66 N. E. 256, 94 Am. St. 180.  It may be said that she ought not to be put in a better position than she would have been in, had the contract been carried out, and that is true; neither should she be put in a worse one; but it must be borne in mind that her husband had taken the entire proceeds, and had rendered himself incapable of carrying out the contract.  Some valuable consideration must be made to appear for her deed, otherwise it would be without consideration so far as is here disclosed, and would be both inequitable and unconscionable, and a court of equity should take cognizance of the situation.  By joining in the deed, the most that can be said is, that she assented to the sale, but, upon what consideration?  None moved to her so far as this record discloses.  The former agreement formed no consideration for it.  We do not doubt that a valid rescission might be made by a postnuptial agreement of the provision made for either or both parties to an antenuptial agreement, changing property rights, but in order that this may be done there must be an honest purpose, and some valuable consideration to support it.  *Hilbish* v.

*Hattle* (1896), 145 Ind. 59, 44 N. E. 20, 33 L. R. A. 783; *Butler* v. *Rickets* (1860), 11 Iowa 107; *Egger* v. *Egger* (1910), 225 Mo. 116, 123 S. W. 928, 135 Am. St 566.

The existence of the marriage relation alone, is not sufficient to give rise to a consideration for a rescission, both upon grounds of public policy, and want of consideration.

7.   There must be some certainty as to what she is to receive, which itself may give rise to a valuable consideration for the rescission, in order that the contract may be valid in law, or it will furnish grounds for the intervention of a court of equity. *Clow* v. *Brown* (1906), 37 Ind. App. 172, 72 N. E. 534; *Bliss* v. *Sheldon* (1849), 7 Barb. 152.

It has been held that an interest created under an

8.   antenuptial agreement can not be barred or released by a postnuptial, parol agreement. *Craig* v. *Craig* (1883), 90 Ind. 215; *Unger* v. *Mellinger* (1906), 37

9.   Ind. App. 639, 77 N. E. 814, 117 Am. St. 348; *Pinkham* v. *Pinkham* (1901), 95 Me. 71, 49 Atl. 48, 85 Am. St. 392. Though a contract, of separation for a consideration advantageous to the wife, and acted upon will be upheld. *Kaiser's Estate* (1901), 199 Pa. St. 269, 49 Atl. 79, 85 Am. St. 785. And that heirs must make strict proof of good faith in case the matter is inequitable or unreasonable. *Pierce* v. *Pierce* (1877), 71 N. Y. 154, 27 Am. Rep. 22. And that a doubtful or ambiguous contract, capable of more than one construction will receive a construction most favorable to the wife. *Deller* v. *Deller* (1910), 141 Wis. 255, 124 N. W. 278, 25 L. R. A. (N. S.) 751; *Tilton* v. *Tilton* (1908), 130 Ky. 281, 113 S. W. 134, 132 Am. St. 359.

Our courts have uniformly upheld antenuptial contracts where fairly entered into, even though the effect be to leave the surviving wife very little, based upon the motives

10.   of marriage not being mercenary, but of the highest consideration in itself, and holding under such contracts, that the considerations fixed by the parties will be deemed sufficient, even though the provisions for the con-

templated wife be much less than the statutory right of widows, or even give her no property interest. *Buffington* v. *Buffington* (1898), 151 Ind. 200, 51 N. E. 328; *Kennedy* v. *Kennedy* (1898), 150 Ind. 636, 50 N. E. 756; *Leach* v. *Rains* (1897), 149 Ind. 152, 48 N. E. 858; *McNutt* v. *McNutt* (1889), 116 Ind. 545, 19 N. E. 115, 2 L. R. A. 372. In *Leach* v. *Rains, supra,* the effect of an executed agreement is pointed out, but here we have nothing beyond the wife joining in the deed, and the single question is What was its effect? Appellant is here possibly confronted by the rule that as by the antenuptial contract she had no other interest in the husband's real estate than that she had voluntarily parted with, an interest could not be created, or enlarged in the remaining real estate by a parol contract, because of the operation of the statute of frauds. *Craig* v. *Craig, supra; Daubenspeck* v. *Biggs* (1880), 71 Ind. 255.

By the original contract, although executory in form, the equitable and beneficial estate in the subject-matter, the land to be conveyed, or devised during life, passed to appellant upon marriage, and in equity she became possessed of the estate to the extent that if the conditions had remained the same, she could have required specific performance. It is impossible that such a contract can be entire as to consideration, because the marriage itself is of the highest consideration, and by the marriage the contract is partially executed, and can not be rescinded, and the parties placed in *statu quo,* if the marriage is to be respected, and it is to the public interest, and good public policy that it should be, hence it is impossible to determine how much of the consideration for the contract, rests upon marriage itself. Practically all other contracts may be said to be entire, and if there is a failure by either party, the other may be called upon in an action at law to respond in damages, while in this class of cases specific performance may be the only remedy. *Campbell* v. *Ingilby* (1856), 21 Beav. 567.

To the extent that failure of consideration is identical with failure or destruction of the subject-matter so as to render specific performance impossible, Can there be said to be failure of consideration in this character of contract? For in any event it could only be partial, owing to the relation of the parties, and the entire subject-matter of the contract. Such contracts in some respects must necessarily be exceptions to the rules governing contracts generally, which are entire, and may be rescinded as an entirety, and the nonoffending parties recompensed in damages. The English courts have adhered rather strictly to the rule that such contracts cannot be rescinded by the parties where they are intended for the benefit of issue, and that omissions or defaults of the principals will be held not to affect the rights of the ultimate beneficiaries, who are regarded as purchasers. *Harvey* v. *Afhley* (1748), 3 Atk. \*608, \*611; *Ramsden* v. *Hylton* (1751), 2 Ves. Sen. \*304; *Hancock* v. *Hancock* (1707), 2 Vern. \*605; *Crofton* v. *Ormsby* (1806), 2 Sch. & Lef. \*583, \*602; *Lloyd* v. *Lloyd* (1837), 2 Myl. & Cr. 192. An examination of these cases and others, discloses that they arise out of settlements made upon the contracting parties by others. The same courts enforce postnuptial settlements and releases of antenuptial contracts where supported by a valuable consideration, and the property settled is the property of the contracting parties, or there is negligence or indifference in procuring the contract to be carried out. *Campbell* v. *Ingilby, supra; Ramsden* v. *Hylton, supra; Crofton* v. *Ormsby, supra.* If the contract remains unexecuted according to its terms, and it becomes impossible to enforce performance, the rule is otherwise, and the party will be entitled to retain his, or her estate. *Pyke* v. *Pyke* (1749), 1 Ves. Sen. \*376. If the defendant had conveyed the property, the wife not joining, to an innocent purchaser for value, the husband would by his act have rendered performance impossible, and virtually renounced it, so that the wife might be let in as in case of ordinary con-

tracts, to claim damages. *Lake Shore, etc., R. Co.* v. *Richards* (1894), 152 Ill. 59, 38 N. E. 773, 30 L. R. A. 33.

But the capacity of the wife to contract, even with her husband, existed, and hence the inquiry is, What was the effect of her joining in the deed, with no explanation regarding it? Is it to be regarded as a rescission in writing, so as to avoid the statute of frauds, and thereby the wife be let in to share under the statute, or is it to be regarded as a case where if there was some parol agreement by way of annulment of, or substitution for, the land originally contracted for, and parted with, the contract becomes one in parol, and falls within the statute of frauds? Nothing appears as to the intention of the parties respecting the other property rights embraced in the original contract. The transaction being capable of two constructions, that one most favorable to the wife should be adopted, both because of the relation itself, and the necessity of its being shown that the contract was fair, or fairly entered into, and because the statute of frauds will not be permitted to be invoked to perpetrate a fraud, and the burden in such cases is upon the heir to establish these propositions. Manifestly it was to the interest of the wife to agree to an abandonment of the specific provisions for her, if she was to be let in to take a widow's share, and this may have been true even though she had other property which upon her prior death would let in her husband. If it be said that she was bound to know that she could not contract by parol for an interest in her husband's lands, it is to be answered that he was also bound to know it, and a release by her of what she was to have under the contract, with nothing in lieu of it, would be inequitable, and in itself a fraud. But the case does not stand in the category of ordinary cases, for the reason that the contract had been partially executed by the marriage, and could not be rescinded, and she was about to become a mother, and by rescission of the contract, the law fixed her status with respect to her husband's property, if

she survived him, and the release of so important a part of the consideration of the contract, as that she did release, must appear to have been upon a valuable consideration, and none is here shown, and the burden was upon appellees to make it appear, for if any presumption is to obtain, it must be that she did that which was to her interest, and not against it. The fact of the deed standing alone, and the husband's receiving the entire consideration, manifestly does not show that the contract was not modified or changed; on the contrary it shows that it was.

We need not, and do not decide whether the deed itself operated as a rescission, or whether the case may on full disclosure fall within the operation of the statute of frauds, but we do decide that the facts show that there was a modification or change of the contract. What it was, or what its effect may be in law, there is no evidence to disclose. Whether a waiver or estoppel may arise out of the facts, see, *Becker* v. *Becker* (1911), 250 Ill. 117, 95 N. E. 70, Ann. Cas. 1912 B 275, and cases cited; 17 Cyc. 692. There was but one issue presented, that of partition.

The verdict is contrary to law, and the judgment is reversed, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 100 N. E. 836. See, also, under (1) 31 Cyc. 109; (2) 30 Cyc. 214; 31 Cyc. 109; (3) 30 Cyc. 216; (4) 21 Cyc. 1246; (5) 16 Cyc. 1050; (6) 9 Cyc. 311; (7) 21 Cyc. 1266, 1267; (8) 21 Cyc. 1265; (9) 21 Cyc. 1258; (10) 21 Cyc. 1249, 1258; (11) 21 Cyc. 1260, 1269; (12) 21 Cyc. 1265, 1267. As to the effect of marriage upon antenuptial contracts, see 73 Am. St. 898. As to the nature of the remedy of specific performance and the grounds for invoking it, see 128 Am. St. 383; 140 Am. St. 56.