## PREWIT *v.* WILSON.

1. A conveyance executed for a valuable and adequate consideration will be upheld against the creditors of the grantor, however fraudulent his purpose may have been, if the grantee had no knowledge thereof.'

2. An ante-nuptial settlement of lands, though made by the settler with the design of defrauding his creditors, will not be set aside in the absence of the clearest proof of his intended wife's participation in the fraud.

APPEAL from the Circuit Court of the United States for the Northern District of Alabama.

The facts are stated in the opinion of the court.

*Mr. John T. Morgan* for the appellants.

*Mr. F. P. Ward, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

On the 27th of April, 1866, Mrs. Josephine Prewit was a widow, only twenty years of age. Her husband was the late John Prewit. Not many months after his death another Mr. Prewit—Richard, this time—proposed marriage to her. He was of mature age, being in his fifty-eighth year. His proposal was rejected. He renewed it, and accompanied it with a promise to settle upon her, if she would consent to the marriage, a large amount of property. This promise moved her to consent. The deed of settlement was accordingly executed, and in May following the marriage took place. Both parties affirm that the marriage was the only consideration for the settlement, and it is so stated in the deed.

A little more than two years and a half afterwards,—in December, 1868,—the husband was adjudged to be a bankrupt in the District Court of the United States for the Northern District of Alabama, in proceedings taken upon his own application; and in the following month the plaintiff was appointed assignee of his effects, and to him an assignment was made. The present suit is brought by him to set aside the deed of settlement, on the alleged ground that it was executed by Prewit to defraud his creditors.

At the time of the settlement Prewit was the holder of a

large amount of property, consisting chiefly of lands in Alabama, but was indebted in an amount greater than their value. It is stated that his property was not worth more than $50,000, and that his debts exceeded $70,000.

It would seem from the evidence, and we assume it to be a fact, that he was insolvent at the time he executed the deed of settlement, in the sense that his debts largely exceeded the value of his property. It may also be taken as true, so far as the present suit is concerned, that he intended by the deed to hinder, delay, and defraud his creditors, and that he made the settlement to place his property beyond their reach.

There is no evidence that Mrs. Prewit was aware at the time of the amount of property he held, or of the extent of his debts, or that he had any purpose in the execution of the deed except to induce her to consent to the marriage. It is not at all likely, judging from the ordinary motives governing men, that whilst pressing his suit with her, and offering to settle property upon her to obtain her consent to the marriage, he informed her that he was insolvent, and would, by the deed he proposed to execute, defraud his creditors. If he intended to commit the fraud imputed to him, it is unreasonable to suppose that he would, by unfolding his scheme, expose his true character to one whose good opinion he was at that time anxious to secure. If capable of the fraud charged, he was capable of deceiving Mrs. Prewit as to his pecuniary condition. She states in her answer that she knew he was embarrassed and in debt, but to what extent or to whom she did not know, and that it was because of the knowledge that he was embarrassed that she insisted upon his making a settlement upon her, The deed itself shows that he owed a large sum, for of the 6,770 acres of land embraced by it, 2,185 acres were charged with the payment of certain designated debts to the amount of $18,000. A knowledge of these facts justified her in saying that she knew he was embarrassed; but they rather dispelled than created any suspicion that he had a design to defraud his creditors. Her statements do not warrant the inference of knowledge of any such purpose, much less of any assent to its execution. Besides the property charged in the deed with the payment of the large amount of indebtedness mentioned, he owned

4,700 acres of land not included in it, and personal property of the value of several hundred dollars.

When a deed is executed for a valuable and adequate consideration, without knowledge by the grantee of any fraudulent intent of the grantor, it will be upheld, however fraudulent his purpose. To vitiate the transfer in such case, the grantee also must be chargeable with knowledge of the intention of the grantor.

Now, marriage is not only a valuable consideration, but, as Coke says, there is no other consideration so much respected in the law. Bishop justly observes, that "Marriage is attended and followed by pecuniary consequences; by happiness or misery to the parties; by life to unborn children; by unquiet or repose to the State; by what money ordinarily buys and by what no money can buy, to an extent which cannot be estimated or expressed, except by the word 'infinite.' To say, therefore, that it is to be regarded, where it is the inducement to any contract, as a valuable consideration, is to utter truth, yet only a part of the truth." And, also, that "Marriage is to be ranked among the valuable considerations, yet it is distinguishable from most of these in not being reducible to a value which can be expressed in dollars and cents, while still it is in general terms of the very highest value." Law of Married Women, sects. 775, 776. Such is the purport and language running through all the decisions, both in England and in this country, with reference to marriage as a consideration for an ante-nuptial settlement. *Barrow* v. *Barrow*, 2 Dick. 504; *Nairn* v. *Prowse*, 6 Ves. Jr. 752; *Campion* v. *Cotton*, 17 id. 264; *Sterry* v. *Arden*, 1 Johns. (N. Y.) Ch. 261; *Herring* v. *Wickham*, 29 Gratt. (Va.) 628.

In *Magniac* v. *Thompson* this court said that "Nothing can be clearer, both upon principle and authority, than the doctrine that to make an ante-nuptial settlement void, as a fraud upon creditors, it is necessary that both parties should concur in or have cognizance of the intended fraud. If the settler alone intend a fraud and the other party have no notice of it, but is innocent of it, she is not and cannot be affected by it. Marriage, in contemplation of the law, is not only a valuable consideration to support such a settlement, but is

a consideration of the highest value, and from motives of the soundest policy is upheld with a steady resolution." 7 Pet. 348, 393.

The same doctrine is asserted by the Supreme Court of Alabama, in which State the parties to the deed of settlement reside and in which it was executed. *Andrews* v. *Jones,* 10 Ala. 400.

According to these authorities there can be no question of the validity of the settlement in this case. There is an entire absence of elements which would vitiate even an ordinary transaction of sale where, if set aside, the parties may be placed in their former positions. And an ante-nuptial settlement, though made with a fraudulent design by the settler, should not be annulled without the clearest proof of the wife's participation in the intended fraud, for upon its annulment there can follow no dissolution of the marriage, which was the consideration of the settlement.

It follows that the decree of the court below must be reversed, and the cause remanded with directions to dismiss the bill of complaint; and it is

*So ordered.*