ROBERTSON et al. v. SCHLOTZHAUER.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917.)

No. 2379.

1. FRAUDULENT CONVEYANCES &#8667;162(1)—WHAT CONSTITUTE.
    Where a deed is executed for a valuable and adequate consideration, without knowledge of the grantee of any fraudulent intent of the grantor, it will be upheld, however fraudulent his purpose; hence a conveyance made under an antenuptial settlement, fraudulently designed by the husband to defeat his creditors, will not be annulled without proof of the wife's participation in the fraud.

2. FRAUDULENT CONVEYANCES &#8667;301(2)—ACTIONS—EVIDENCE—SUFFICIENCY.
    In a suit by a husband's trustee in bankruptcy to set aside, as a fraud upon creditors, a deed executed by the husband pursuant to an antenuptial

&#8667;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

agreement, evidence *held* insufficient to show the wife's participation in the fraud.

3. FRAUDULENT CONVEYANCES ☞76(2)—CONSIDERATION—VALUABLE CONSIDERATION.

Marriage is a most valuable consideration, and a conveyance made pursuant to an antenuptial settlement, the consideration of which was marriage, cannot be set aside as fraudulent as to creditors on the ground of want of consideration.

4. FRAUDULENT CONVEYANCES ☞120(1)—TRUSTS—CREATION.

Where a husband entered into an antenuptial agreement to convey specific property to his wife, and the marriage was consummated in consideration of such agreement, a trust in favor of the wife was created, and a deed subsequently executed by the husband to effectuate such trust is not subject to attack on the ground that the wife was only a creditor and such conveyance preferred her.

5. BANKRUPTCY ☞172—FRAUDULENT CONVEYANCES—RECORD OF CONVEYANCES.

Bankruptcy Act July 1, 1898, c. 541, § 47a, 30 Stat. 557 (Comp. St. 1916, § 9631), declares that trustees, as to all property coming into the custody of the bankruptcy court, shall be deemed vested with all rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, and as to all property not in the custody of the bankruptcy court shall be deemed vested with all the rights, remedies, and powers of a judgment creditor. A husband, pursuant to an antenuptial agreement, executed a deed conveying the property to his wife as agreed, which deed was executed only shortly before the filing of an involuntary petition in bankruptcy against the husband, and was not recorded until after the petition had been filed. The land was located in Indiana, in which state the parties resided. Burns' Ann. St. Ind. 1914, § 3962, declares that every conveyance or mortgage of lands shall be recorded in the recorder's office of the county where such lands shall be situated, and shall take priority according to the time of filing thereof, and that such conveyance or mortgage shall be fraudulent and void against any subsequent purchaser or mortgagee in good faith and for valuable consideration, having his deed or mortgage first recorded. *Held*, that, while the trustee in bankruptcy is deemed a judgment creditor, his rights as such did not, a judgment creditor not being a subsequent purchaser or mortgagee in good faith for a valuable consideration, take priority over the rights of the wife under the deed.

6. HUSBAND AND WIFE ☞129(3)—WIFE'S PROPERTY—ESTOPPEL TO CLAIM.

In such case, though the husband continued to control the land from the date of the marriage down to the date of the conveyance, which was less than a month before petition in involuntary bankruptcy against him was filed, though the husband continued to carry the lands conveyed as an asset belonging to him, estopped from setting up her rights, for, while she was charged with knowledge that the record title was in her husband, that fact alone furnished no basis for an estoppel on the theory that she consented to the husband's holding himself out to the world as owner of the property.

Appeal from the District Court of the United States for the District of Indiana.

Suit by Harry A. Schlotzhauer, trustee in bankruptcy of Lane Robertson, a bankrupt, against Alma Maud Robertson and Lane Robertson. From a decree for complainant, defendants appeal. Reversed, with directions to dismiss the bill.

Appeal from decree setting aside, as in fraud of creditors of the bankrupt, antenuptial contract between appellants, and a deed made in pursuance of the contract. The contract is as follows:

"This agreement, made and entered into this 9th day of October, 1913, by and between Lane Robertson, party of the first part, and Alma Maud Smith, party of the second part, witnesseth: That whereas, the parties hereto desire to become husband and wife: Now, therefore, in consideration of the said party of the second part becoming the wife of the first party, the said first party agrees upon demand to convey to said second party the following described real estate in the county of Vigo, and state of Indiana: Forty (40) acres more or less in the northwest part of east fractional section five (5), township ten (10) north, range ten (10) west, commencing on the north line of said fractional section and the point where the levee and Darwin Road diverges to the southwest from said line; thence west, following said levee to the Wabash river; thence north with the meanderings of said river to the north line of said fractional section; thence east with said line to the place of beginning. Also south fractional section thirty-two (32), township eleven (11) north, range ten west, excepting eighteen (18) rods wide off the east end of said fractional section. Also lot number seven (7) in Hulman's subdivision of part of out-lot sixty-four (64) of the original out-lots of the town (now city) of Terre Haute. Also forty (40) by one hundred and forty-two (142) feet in the southeast corner of block one (1) of Freeman's subdivision of a part of out-lot sixty-five (65) of the original out-lots of the town (now city) of Terre Haute.

"In witness whereof," etc.

"[Signed]                          Lane Robertson.
                                   "Alma Maud Smith."

"Acknowledged same date before Daniel V. Miller, notary public."

For about 20 years the bankrupt, Lane Robertson, was engaged in the business of selling at retail pianos and other general music merchandise. His main store was at Terre Haute, Ind., and he had five branch stores in different nearby cities; the business being carried on by him under the trade name of Indiana Music Company. For. a number of years his business ranged from $150,000 to $175,000 annually. He carried a considerable stock, had many outstanding accounts, largely in the shape of piano leases, and his liabilities were likewise large. From time to time he acquired various pieces of real estate, consisting mainly of a home in Terre Haute, several houses and lots there, and a farm in the same county; the farm, home, and another piece of real estate in Terre Haute constituting the subject-matter of this controversy, and being alleged in the bill of complaint to have a value of $22,000, subject to mortgage liens thereon aggregating about $6,000.

Under date of May 21, 1914, Robertson made a deed of this real estate to his wife, Alma Maud Robertson, one of appellants, which deed was filed for record June 16, 1914, two days after the filing of the involuntary petition to have Lane Robertson declared a bankrupt. The contract was never recorded. The bill charged invalidity of the conveyance for want of consideration, and because made for the purpose of hindering, delaying, and defrauding the creditors of the bankrupt. February 16, 1915, defendants filed answer, setting up that the conveyance was made pursuant to the antenuptial contract, and denying the alleged fraud. On November 9, 1915, on motion that day made, the bill of complaint was by leave of court amended by adding another clause, wherein the complainant alleged the making of the antenuptial contract on the day it bears date, and charged that at the time of its making and continuously thereafter Robertson was insolvent, and that the conveyance to her of May 21, 1914, was made to defraud Robertson's other creditors, and for the purpose of preferring Mrs. Robertson as one of his creditors by thus paying her in full, and that she then well knew that thereby she would be preferred, to the detriment of other unsecured creditors. Appellants were married October 12, 1913, three days after the date of the contract.

Bingham & Bingham, of Indianapolis, Ind., for appellants.
Martin M. Hugg, of Indianapolis, Ind., for appellee.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The District Court found in its decree that the contract and the deed made in pursuance of it "were both made and executed with the intent to hinder, delay, and defraud the creditors of said defendant Lane Robertson." If this be so, the relief awarded was proper. But does the record support the finding that the contract was entered into for such purpose?

The bill was filed evidently without knowledge on the part of the trustee that there was any such antenuptial contract. The salient facts then appearing, viz. a deed to the wife conveying a substantial part of the husband's estate, then manifestly insufficient if forced to sale, to discharge his debts, made a couple of days before petition in bankruptcy is filed, and recorded some weeks thereafter, for a recited consideration of "one dollar and other valuable consideration," invited closest scrutiny of the transaction, and clearly justified judicial inquiry to determine whether or not the transaction was free from that taint which these facts of themselves might tend to lend it. And when the existence of the antenuptial contract was discovered, it became the duty of the trustee to test the good faith of that transaction—primarily to know whether the instrument was what it purports to be—an antenuptial contract, made in fact before the marriage, or was part of a subsequently devised plan whereby such an instrument, antedated, was to be made a basis for rescuing this real estate from the creditors of the bankrupt, and, if in fact made before the marriage, whether or not it was a mere instrumentality then devised, and intended by the parties to it, eventually to cheat and defraud the creditors.

[1] If this contract was not in fact made before the marriage, the rankest perjury would be attributable to the four persons who testified in detail to its then making—Robertson, his wife, Mrs. Smith (his mother-in-law), and Daniel V. Miller, the lawyer who advised the parties who drew it. All these testified fully on the subject; and from their testimony, if true, it would follow that Mrs. Smith insisted on provision being made for her daughter before she would finally consent to her marriage, and that Robertson promised to convey the real estate to her, that they procured the license to marry, went to Miller's office, and that Miller drew the antenuptial contract, which they signed, and that she took it away and showed it to her mother a couple of days before the marriage. Nothing appears in the testimony of these witnesses to raise a suspicion of its falsity in this regard, and there is no contradictory evidence. Indeed the amendment to the bill charges as a fact that the contract was made and entered into before the marriage, and no one contends that the truth is otherwise. Was, then, this contract entered into for the purpose of defrauding Robertson's creditors, or, more accurately did Mrs. Robertson have such fraudulent purpose? For as stated in Prewit v. Wilson, 103 U. S. 22, 26 L. Ed. 360, where, as here, an antenuptial contract was in issue:

"When a deed is executed for a valuable and adequate consideration, without knowledge by the grantee of any fraudulent intent of the grantor, it will be upheld, however fraudulent his purpose. To vitiate the transfer in such case, the grantee also must be chargeable with knowledge of the intention of the grantor. * * * And an antenuptial settlement, though made with a fraudu-

lent design by the settlor, should not be annulled without the clearest proof of the wife's participation in the intended fraud, for upon its annulment there can follow no dissolution of the marriage, which was the consideration of the settlement."

[2] And does the record sustain the finding that Mrs. Robertson entered into this contract with such fraudulent intent? To all appearances Robertson was then a thriving business man. His large store at Terre Haute and the five branch stores would be strongly suggestive of his prosperity, especially to a woman without intimate knowledge of his business, who was sufficiently predisposed in his favor to seriously think of marrying him. It seems the mother, Mrs. Smith, was left a widow, with small resources, and three children to look after, and had made some sacrifice to give this daughter a good education, so that at 25 the daughter, after some further educational advantages, was about to resume her interrupted occupation of teaching, when Robertson insisted on marrying her. She agreed to marry him, subject to her mother's consent. The mother, believing him to be a man of very considerable means, insisted that in view of her own financial troubles, occasioned by her husband's death without provision having been made for her, some provision should be made for her daughter through settlement on her of some property. After long discussion between the three, Robertson agreed to do this, and in pursuance thereof the antenuptial contract was drawn by Lawyer Miller and duly executed by the parties in his presence. Both women testified unequivocally, not only to their entire want of knowledge of Robertson's financial difficulties prior to the marriage, but to their unqualified belief that he was a man of large means, well able to settle upon his prospective wife a substantial property. We find in the record no testimony and no facts or circumstances which tend to contradict this, and it surely is not inherently so unreasonable and unbelievable as to warrant the conclusion that the very contrary is the fact—a conclusion necessary to be reached before a finding of Mrs. Robertson's fraudulent intent in entering into the contract would be justified. The following from Prewit v. Wilson, supra, is applicable to this situation:

"There is no evidence that Mrs. Prewit was aware at the time of the amount of property he held, or of the extent of his debts, or that he had any purpose in the execution of the deed except to induce her to consent to the marriage. It is not at all likely, judging from the ordinary motives governing men, that whilst pressing his suit with her, and offering to settle property upon her to obtain her consent to the marriage, he informed her that he was insolvent, and would, by the deed he proposed to execute, defraud his creditors. If he intended to commit the fraud imputed to him, it is unreasonable to suppose that he would, by unfolding his scheme, expose his true character to one whose good opinion he was at that time anxious to secure."

As to the antenuptial contract the record does not warrant the finding that Mrs. Robertson entered into it with fraudulent intent, as found in the decree.

[3] 2. That marriage is regarded in law as a proper and valuable consideration for the conveyance of property has been repeatedly held in Indiana, as well as elsewhere. Bunnel v. Witherow, 29 Ind. 123; Buffington v. Buffington, 151 Ind. 200, 51 N. E. 328; Mallow v. Eates, 179 Ind. 267, 274, 100 N. E. 836; State ex rel. Harrison v. Osborn,

143 Ind. 671, 677, 42 N. E. 921. In Magniac v. Thompson. 7 Pet. 346, 393, 8 L. Ed. 709, the United States Supreme Court said:

"Marriage, in contemplation of the law, is not only a valuable consideration to support such a settlement, but is a consideration of the highest value; and from motives of the soundest policy is upheld with a steady resolution."

And in Prewit v. Wilson, supra, the same court said:

"Now, marriage is not only a valuable consideration, but, as Coke says, there is no other consideration so much respected in the law. Bishop justly observes that 'marriage is attended and followed by pecuniary consequences; by happiness or misery to the parties; by life to unborn children; by unquiet or repose to the state; by what money ordinarily buys, and by what no money can buy, to an extent which cannot be estimated or expressed, except by the word "infinite." To say, therefore, that it is to be regarded, where it is the inducement to any contract, as a valuable consideration, is to utter truth, yet only a part of the truth.' And also that 'marriage is to be ranked among the valuable considerations, yet it is distinguishable from most of these in not being reducible to a value which can be expressed in dollars and cents, while still it is in general terms of the very highest value.' Law of Married Women, §§ 775, 776. Such is the purport and language running through all the decisions, both in England and in this country, with reference to marriage as a consideration for an antenuptial settlement."

Thus it is apparent, not only that Mrs. Robertson entered into the contract in good faith, but also that she entered into it for a lawful valuable consideration by her rendered.

[4] 3. The amendment to the bill was drafted evidently on the theory that the antenuptial contract, being for a lawful consideration, and having been by the prospective wife entered into in good faith, constituted her a creditor of Robertson, and that through the conveyance to her of May 21, 1914, the debt to her created by the contract was paid by Robertson, and that at the time of such payment, so shortly before the filing of the petition in bankruptcy, Robertson being to her knowledge insolvent, the payment to her was preferential and void, and justified setting aside the conveyance. Without detailing the facts, it may be assumed that at this time Mrs. Robertson had reason to believe, and is chargeable with knowledge, that her husband was insolvent. If, therefore, her status under the contract was that of an unsecured creditor, and through the conveyance her unsecured debt due from her husband was paid, the conveyance should be set aside as preferential. But was Mrs. Robertson's status under the contract merely that of an unsecured creditor?

It is a rule of general application that where parties contract for a lawful valuable consideration for the conveyance to one of specific property then owned and possessed by the other, and the consideration passes, until actual conveyance the owner becomes a trustee holding the legal title in trust for the purchaser, who in the meantime is the equitable owner of the property. Story's Eq. Jur. (13th Ed.) § 1212; Pomeroy's Eq. Jur. (2d Ed.) § 1261; Beckwith et al. v. Clark, 188 Fed. 171, 110 C. C. A. 207. A situation showing facts strikingly similar in this regard to those here was considered in McKnight v. Kingsley, 48 Ind. App. 372, 92 N. E. 743, wherein the court said:

"The evidence clearly shows that the land was conveyed in pursuance of a contract made before marriage and for a valuable consideration. This agree-

ment was made and executed prior to any knowledge upon the part of appellee Mary C. Kingsley of any claim that appellant had against Alexander Kingsley. Said appellee learned of the claim a few days before the last conveyance. Had the deed been executed when the contract was made, there would have been no suggestion of fraud. From the time the marriage was consummated under the agreement Mary C. Kingsley became the equitable owner of said real estate. The fact that she intended, when she took the conveyance, that appellant was to have no part of the property, did not, although she knew of the pending suit, make her act fraudulent; for, under the evidence, the fact that she intended to prevent appellant from getting any part of the real estate would be immaterial. She was only securing what belonged to her."

In Mallow v. Eates, 179 Ind. 267, 100 N. E. 836, the court held that an antenuptial contract, executory in form, upon the marriage passes to the wife an equitable interest in the land thereby contracted to be conveyed to her. It thus follows that upon the marriage taking place Mrs. Robertson became the equitable owner of the property so contracted to be conveyed to her, and her husband a trustee, holding the legal title for her use, and that the conveyance of May 21, 1914, did not operate to pay Mrs. Robertson an unsecured debt, but invested her with the legal title to real estate which in equity was already hers, and had been from the time of her marriage nearly eight months before. In such case no question of preferential payment arises.

[5] 4. What is the effect of failure to record the deed in question until some days after filing the petition in bankruptcy? Section 47a of the Bankruptcy Act provides:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

In Bailey, Trustee, v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275, it was held that the time as of which, under section 47a, the trustee's lien or rights would attach as though he were a judgment creditor, is when the petition in bankruptcy was filed. On June 14, 1914 (the day of the filing of the petition in bankruptcy), what right would a then judgment creditor of Robertson have had to satisfy his judgment out of this real estate of which Mrs. Robertson then held a deed which was not filed for record till two days thereafter? Registry of conveyances, and the effect thereof, is matter of state regulation. Section 3962, Burns' Ann. Stat. Ind., provides:

"Every conveyance or mortgage of lands or of any interest therein, and every lease for more than three years shall be recorded in the recorder's office of the county where such lands shall be situated; and every conveyance, mortgage or lease shall take priority according to the time of the filing thereof, and such conveyance, mortgage or lease shall be fraudulent and void as against any subsequent purchaser, lessee or mortgagee in good faith and for a valuable consideration, having his deed, mortgage or lease first recorded, the same to be in effect on and after January 1, 1914."

As early as 1845 the Indiana Supreme Court, passing on a statute similar as regards any such question, said:

"The claim of the other defendants, who have judgments against Durbin obtained subsequently to the mortgage to the complainant, but before it was recorded, must yield to that mortgage, though it was not recorded in time. A mortgage of real estate, though not recorded in season, is a valid conveyance, except so far as its validity may be affected by statute; and the statute on the subject renders such conveyances not recorded in time void only as to subsequent purchasers and mortgagees for value, whose deeds are first recorded. It has no relation to judgment creditors. Perhaps a bona fide purchaser at sheriff's sale under such judgment might be protected by the statute, but that is a different case. 4 Kent's Com. 173." Sparks et al. v. State Bank, 7 Blackf. (Ind.) 469.

In the same volume, page 510, Doe, etc., v. Hurd et al., the court said:

"The answer to this is that the deed to the defendants was recorded before the sheriff's sale. The circumstance that the judgment was rendered before the deed was recorded is not material. Deeds of real estate are not void for not being recorded in time, except as to bona fide purchasers for value whose deeds are first recorded. A judgment creditor cannot be considered as such a purchaser; nor can a purchaser under the judgment hold, who has notice by the record of the prior conveyance."

This has been followed in Orth v. Jennings et al., 8 Blackf. 420; Runyon v. McClellan et al., 24 Ind. 165; Pierce v. Spear et al., 94 Ind. 127, 130; Hutchinson, etc., v. First National Bank, 133 Ind. 271, 281, 30 N. E. 952, 36 Am. St. Rep. 537; State Bank v. Backus, 160 Ind. 682, 694, 67 N. E. 512. A judgment creditor, not being a "subsequent purchaser, lessee, or mortgagee," as against whom alone, under the statute, the prior unrecorded deed is "fraudulent and void," could not, for the want of its recording, avoid the conveyance; neither can the trustee in bankruptcy do so.

[6] 5. It is urged that Robertson's continued possession and management of this real estate, after the marriage, continuing as before to carry it on the books of his business as an asset, entering on the books the income and the outlay, and in conversations with his creditors and others referring to the property as his own, without suggestion by record or otherwise of any contractual interest of his wife therein, constitutes not only a badge of fraud bearing on the good faith of the original transaction, but also raises an estoppel against Mrs. Robertson from asserting as against Robertson's creditors any interest under the contract. While it is quite true that such conduct would be consistent with an original fraudulent purpose in the making of the contract, such fact alone will not raise a presumption of fraudulent design. Besides, and as specially bearing on the contention of her estoppel, the record does not afford any proof that she had any knowledge of what appeared in his books nor of any statements regarding the property which since the marriage he made to his creditors or others. The fact alone that he, her husband, continued in the actual management of the property on her behalf, and had not during the eight months rendered her an account of the income therefrom was not so strange, unusual, or startling a circumstance as of itself to suggest to her that he was improperly representing the property as his own. She was of course chargeable with knowledge that the public records disclosed nothing to indicate any interest of her own in the property.

But this fact- alone, unconnected with representations of conduct on her part, upon which others have to their substantial disadvantage been induced to act, would not raise an estoppel. State Bank v. Backus, 160 Ind. 682, 695, 67 N. E. 512. The bill was not drawn upon any theory that Mrs. Robertson by her conduct estopped herself as against Robertson's creditors from asserting title in this property, nor upon the theory that through the conduct or upon the representations of either or both of them after the marriage the creditors were misled to their material detriment; neither does the record disclose evidence which would support allegations so predicated.

We conclude, therefore, the record herein establishes (a) that the antenuptial contract was in good faith and without intent to defraud the creditors of the bankrupt entered into by appellant Alma Maud Robertson; (b) that thereby she became the equitable owner of the real estate here in question; (c) that the deed to her from the bankrupt was made in pursuance of such antenuptial contract and merely vested in her the legal title of real estate which was equitably her own; (d) that as against appellee she is entitled to hold the real estate so conveyed to her by the deed from her husband, of May 21, 1914.

The decree is reversed, with direction to dismiss the bill.