# Legality of Alternative Organ Donation Practices Under 42 U.S.C. § 274e

Two alternative kidney donation practices, in which a living donor who is incompatible with his intended recipient donates a kidney to a stranger in exchange for the intended recipient's receiving a kidney from another donor or increased priority on a waiting list, do not violate the prohibition on transfers of organs for "valuable consideration" in 42 U.S.C. § 274e.

March 28, 2007

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF HEALTH AND HUMAN SERVICES

Section 301 of the National Organ Transplant Act ("NOTA" or "Act"), entitled "Prohibition of organ purchases," imposes criminal penalties of up to $50,000 and five years in prison on any person who "knowingly acquire[s], receive[s], or otherwise transfer[s] any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce." Pub. L. No. 98-507, § 301, 98 Stat. 2339, 2346–47 (1984) (codified at 42 U.S.C. § 274e (2000)). You have asked whether certain arrangements for donation of kidneys by living donors involve "valuable consideration" under this statute. We conclude that they do not.

## I.

Someone requiring a kidney transplant may generally obtain a kidney in two ways. First, he may join a national waiting list to receive a kidney from a deceased donor. There are far more people waiting, however, than there are cadaveric kidneys available, and the wait can be long. Alternatively, such a person may receive a kidney from a living donor. In many cases, however, the would-be donor is biologically incompatible with the intended recipient.

Two alternative donation practices have developed to mitigate these problems. In a Living Donor/Deceased Donor ("LDDD") Exchange, a living donor donates a kidney to an unknown, compatible recipient on the list for a deceased donor. The living donor's intended (but incompatible) recipient receives in turn some priority on the deceased-donor waiting list, and this priority may significantly shorten his waiting time. In a Paired Exchange, an organ procurement and transplantation network matches two or more incompatible donor/recipient pairs where each living donor is compatible with another living donor's intended recipient. Hospitals have performed a number of transplants involving Paired Exchanges. *See, e.g.*, Susan Levine, *Hopkins Celebrates Quintuple Transplant*, Wash. Post, Nov. 21, 2006, at A21. You seek our views primarily so that the Secretary of Health and Human Services may know whether section 301 imposes a barrier to his taking certain actions to encourage these practices.

When a living donor simply gives the gift of a kidney to his intended recipient, he receives in return only the satisfaction of helping that recipient. Although a knowing "transfer" of a "human organ . . . for use in human transplantation" has occurred, the lack of any exchange eliminates any question of the transfer's being "for valuable consideration." 42 U.S.C. § 274e(a). But when a donor transfers the kidney through an LDDD or Paired Exchange to be implanted into someone else, the donor does so in exchange for a benefit to his intended recipient as a third party. The intended recipient either receives from a network advancement on the waiting list for a cadaveric kidney or receives a kidney from another living donor. Thus, the question arises whether either of these donative practices involves a transfer for "valuable consideration" under section 301.

## II.

The term "consideration" has deep roots in the common law of contracts and a fairly established meaning, but the meaning of the term "valuable consideration" is less clear. Drawing on the available sources of guidance, however, we conclude that the latter term as used in section 301 does not apply to an LDDD Exchange or a Paired Exchange, because neither involves the buying or selling of a kidney or otherwise commercializes the transfer of kidneys.[1]

Section 301 does not define "valuable consideration," but it and a related provision in the Act provide some initial guidance. Section 301 lists certain acts that do not involve "valuable consideration": "The term 'valuable consideration' does not include the *reasonable payments* associated with the removal, transportation, implantation, processing, preservation, quality control, and storage of a human organ or the *expenses* of travel, housing, and lost wages incurred by the donor of a human organ in connection with the donation of the organ." 42 U.S.C. § 274e(c)(2) (emphases added). These exclusions address types of "payments" and "expenses" that may otherwise fall within the term "valuable consideration" on the theory that they involve monetary benefits or at least a monetary transfer. Any benefits received in the LDDD and Paired Exchanges, on the other hand, are not monetary or otherwise pecuniary. To the extent that Congress concluded that exclusions from the prohibition on transfers for "valuable consideration" were necessary only for the specified monetary payments and reimbursements, the lack in section 301 of a comparable exclusion for non-monetary benefits may suggest that non-monetary exchanges such as LDDD and Paired Exchanges do not involve valuable consideration.

The title that Congress affixed to section 301 supports such an interpretation. It is established that "the title of a statute or section can aid in resolving an ambiguity

---

[1] In considering this question, we have benefited from the views of your office as well as those of the Department of Justice's Criminal Division. Our conclusion is consistent with the views of both.

in the legislation's text." *INS v. Nat'l Ctr. for Immigrants' Rights*, 502 U.S. 183, 189 (1991) (concluding that the term "employment" in statutory text referred to "unauthorized employment," in accordance with heading of section). Here, although the title does not expressly address "valuable consideration," it does describe section 301 as involving a "[p]rohibition of organ purchases." 42 U.S.C. § 274e. Reading the statutory text in light of this title suggests that the vague phrase "valuable consideration" addresses organ transfers that could be considered to involve a "purchase[]," rather than all donations that may involve some exchange.

In addition, section 301 applies only "if the transfer affects interstate commerce." Apart from the distinct question whether a transfer that did involve valuable consideration would satisfy this requirement, the requirement indicates that section 301 rests on Congress's power to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. That foundation further suggests that "valuable consideration" involves some sort of commercial transaction. *See United States v. Lopez*, 514 U.S. 549, 561 (1995) (finding criminal statute not authorized by this power, because it had "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms"); *cf. Gonzales v. Raich*, 545 U.S. 1, 25 (2005) ("Unlike those at issue in *Lopez* and *Morrison*, the activities regulated by the [Controlled Substances Act] are quintessentially economic. . . . [It] regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market."); *Perry v. St. Francis Hosp. & Med. Ctr.*, 886 F. Supp. 1551, 1563–64 (D. Kan. 1995) ("For whatever reason, . . . society presently rejects the commercialization of human organs . . . and tolerates only an altruistic system of voluntary donation.").

As a further, albeit less direct, indication, the Act in another section gives certain duties to an organ procurement and transplantation network established by the Secretary. The network has a duty to "work actively to increase the supply of donated organs." 42 U.S.C. § 274(b)(2)(K) (2000). One should seek to interpret the provisions of an act in harmony with one another; here, that rule of interpretation indicates that this statutory mandate to increase the supply of donated organs can illuminate the statute's unclear phrase "valuable consideration." In particular, section 301 should be read to allow creative practices that "increase the supply of donated organs," *id*., but do not involve buying, selling, or otherwise commercializing the transfer of organs. Both of the forms of exchange at issue enable someone who desires simply to donate his kidney to a family member or another specific individual, but is unable to do so directly due to incompatibility, to benefit that individual by other means. By donating his kidney to someone other than his intended recipient, the donor does receive something in exchange, but not a payment, financial gain, or direct personal benefit; rather, he receives an increased opportunity for his intended recipient to obtain a compatible kidney. These

arrangements may fairly be described as enabling donations rather than as transfers for "valuable consideration."[2]

Some other references to "valuable consideration" in the United States Code reinforce these indications from the Act (while the remainder of the references are inconclusive). The most relevant reference tracks section 301 by making it "unlawful for any person to knowingly acquire, receive, or otherwise transfer any human fetal tissue for valuable consideration if the transfer affects interstate commerce." 42 U.S.C. § 289g-2(a) (2000). The title—"Purchase of tissue"— also parallels section 301. It is an accepted rule that "when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). The prohibition on the purchase of fetal tissue was enacted nine years after NOTA, *see* National Institutes of Health Revitalization Act, Pub. L. No. 103-43, § 112, 107 Stat. 122, 131 (1993), and is codified with NOTA as part of the Public Health Service Act, 42 U.S.C. §§ 201–300gg-92 (2000). Thus, the penalty for violating the prohibition is illuminating: a "fine . . . in an amount not less than twice the amount of the valuable consideration received." *Id*. § 289g-2(c)(2). The requirement for calculating the fine presumes that the "valuable consideration" is monetary or at least has a readily measurable pecuniary value. It is reasonable to apply that same meaning to the identical term in section 301, and "valuable consideration" so understood would not include the two donative practices at issue.[3]

A further indication of the meaning of "valuable consideration" in section 301 is usage in similar contexts in contemporaneous state laws. A California law enacted in 1984, the same year as NOTA, makes it "unlawful for any person to knowingly acquire, receive, sell, promote the transfer of, or otherwise transfer any

---

[2] The Act's legislative history does not directly suggest a meaning of "valuable consideration" but is consistent with the above indications and interpretation. The Senate Report states that the bill "prohibits the interstate buying and selling of human organs for transplantation" and "is directed at preventing the for-profit marketing of kidneys and other organs." S. Rep. No. 98-382, at 2, 4, *reprinted in* 1984 U.S.C.C.A.N. 3975, 3976, 3978. It adds that "individuals or organizations should not profit by the sale of human organs" and that "human body parts should not be viewed as commodities." *Id*. at 16–17, 1984 U.S.C.C.A.N. at 3982. The House Conference Report explains that the final bill "intends to make the buying and selling of human organs unlawful." H.R. Conf. Rep. No. 98-1127, at 16, *reprinted in* 1984 U.S.C.C.A.N. 3989, 3992. The legislative history does not suggest that any member of Congress understood the bill as addressing non-monetary or otherwise non-commercial transfers.

[3] Several other federal statutes use "valuable consideration" in different contexts and without defining it or otherwise clearly indicating its meaning, although they seem to suggest some sort of commercial transaction. *See, e.g.*, 15 U.S.C. § 1060 (2000) (protecting "subsequent purchaser [of a trademark] for valuable consideration"); 31 U.S.C. § 3125(a) (2000) (defining "obligation" to mean "a direct obligation of the United States Government issued under law for valuable consideration, including bonds, notes, certificates of indebtedness, Treasury bills, and interim certificates"); 47 U.S.C. § 338(e) (2000) (making it unlawful for a satellite carrier to "accept or request monetary payment or other valuable consideration" for certain actions).

human organ, for purposes of transplantation, for valuable consideration." Cal. Penal Code § 367f(a) (2005). That statute defines "valuable consideration" to mean "financial gain or advantage." *Id*. § 367f(c)(2). An essentially identical South Dakota prohibition enacted in 1992 likewise defines "valuable consideration" to mean "financial gain or advantage." *See* S.D. Codified Laws §§ 34-26-43 (definition), 34-26-44 (prohibition) (2005). And the Uniform Anatomical Gift Act, while not defining "valuable consideration," does provide that "[a] person may not knowingly, for valuable consideration, *purchase or sell* a part for transplantation or therapy, if the removal of the part is intended to occur after the death of the decedent." *Id.* § 10(a) (1987) (emphasis added). (All three of these sources also have exclusions for reasonable payments similar to the exclusions in section 301.) This usage also indicates that "valuable consideration," at least as applied to organ donations, involves some sort of buying and selling, or otherwise commercial transfer, of organs.

It also is appropriate, as suggested above, to look to the common law of contracts, because "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981) (citation omitted). With regard to mere "consideration," a broad range of promises and actions may suffice, though even there the outer limits are hazy. *Compare* 2 William Blackstone, *Commentaries* \*440 (5th ed. 1773) ("[I]n case of leases, always reserving a rent, though it be but a peppercorn [such] . . . considerations will, in the eyes of the law, convert the gift . . . into a contract."), *with* Restatement (Second) of Contracts § 79 cmt. d (1979) ("Disparity in value, with or without other circumstances, sometimes indicates that the purported consideration was not in fact bargained for but was a mere formality or pretense."). With regard to "valuable consideration," however, there is much less of a "settled meaning." The term is rarely defined, and its apparent meaning has varied over time and among jurisdictions. It also is difficult to determine how it differs from mere "consideration," even though, under normal rules of interpretation, one would expect the additional word to have some meaning. In addition, the definitions indicated by various authorities are not specific to the context of organ transfers. Nevertheless, the common law does at least allow for the reading of section 301 that we have derived from relevant statutory usage; it certainly does not foreclose it.

*Black's Law Dictionary* defines "consideration" generally as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp. to engage in a legal act." *Id.* at 324 (8th ed. 2004). It then defines "valuable consideration" as "[c]onsideration that is valid under the law; consideration that either confers a *pecuniarily* measurable benefit on one party or imposes a *pecuniarily* measurable detriment on the other." *Id*. at 326 (emphases added). This latter definition dates to the 1999 edition, which was a significant update and revision.

*Id.* at 302 (7th ed. 1999). The definition in the edition current when NOTA was enacted had not required "pecuniarily measurable" consideration:

> A class of consideration upon which a promise may be founded, which entitles the promisee to enforce his claim against an unwilling promisor. Some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. . . . It need not be translatable into dollars and cents, but is sufficient if it consists of *performance, or promise thereof, which promisor treats and considers of value to him*.

*Id.* at 1390 (5th ed. 1979) (emphasis added). (This edition did, however, define "valuable" to mean "[o]f financial or market value; commanding or worth a good price; of considerable worth in any respect, whether monetary or intrinsic." *Id*.) Under this definition, a kidney made available to a third party in an LDDD or Paired Exchange could be viewed as a "benefit" "of value to" the donor of a kidney; in turn, the network in an LDDD Exchange and the complementary donor in a Paired Exchange could be viewed as undertaking a "responsibility" toward the intended recipient.

The case law is similarly inconclusive as to whether "valuable consideration" necessarily involves a pecuniary element, though it does suggest that valuable consideration typically involves consideration that can be measured in monetary terms. In *Prewit v. Wilson*, 103 U.S. 22 (1881), the Supreme Court quoted Sir Edward Coke for the proposition that "[m]arriage is to be ranked among the valuable considerations, yet it is distinguishable from most of these in not being reducible to a value which can be expressed in dollars and cents." *Id*. at 24 (citation omitted). Other authority also indicates that "valuable" generally refers to a pecuniary value. *See, e.g.*, *Nelson v. Brown*, 51 So. 360, 363 (Ala. 1910) (marriage "is valuable in a way which must be differentiated from that valuable consideration which will support a contract in that ordinarily the word 'valuable' signifies that the consideration so described is pecuniary, or convertible into money"); *In re Haugh's Estate*, 12 Ohio Supp. 57, 1943 WL 3216, at *3 (Ohio Prob. 1943) (quoting digest for the proposition that "[m]arriage, however, is distinguishable from other valuable consideration in that it is not capable of being reduced to a value which can be expressed in dollars and cents," but noting that "an antenuptial contract does have certain very valuable considerations which can be reduced to dollars and cents"). In *Stanley v. Schwalby*, 162 U.S. 255 (1896), however, the Court concluded that the promise to establish a military headquarters on particular land was valuable consideration for a city's conveyance of the land to the United States, as "[a] valuable consideration may be other than the actual payment of money, and may consist of acts to be done after the conveyance." The Court explained that "[t]he advantage enuring to the city of San Antonio from the

establishment of the military headquarters there was clearly a valuable consideration for the deed of the city to the United States," but did not discuss how readily that promised act could be converted into a pecuniary value to the city. *Id*. at 276.

Thus, the common law understanding of "valuable consideration" either is inconclusive, leaving open the meaning we derive from statutory sources, or tends to confirm that meaning by suggesting that consideration, to be "valuable," should be pecuniary, readily convertible into monetary value. There is no doubt a sense in which any act or thing could be given some value in dollars and cents. But the third-party benefits received under the donative practices at issue here are not commonly or readily so measured, as far as we are aware.

Finally, notwithstanding the above indications of the meaning of "valuable consideration," the scope of the phrase does remain open to some question. Given that section 301 is a criminal statute, it is therefore appropriate to apply the rule of lenity in favor of a narrower reading, and thus to understand "valuable consideration" in section 301 of the Act as referring to the buying and selling of organs for monetary gain or to organ exchanges that are otherwise commercial. *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Even if [the relevant statute] lacked clarity on this point, we would be constrained to interpret any ambiguity in the statute in petitioner's favor."). As the Supreme Court has stressed: "[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Dowling v. United States*, 473 U.S. 207, 214 (1985) (citations and internal quotations omitted). Setting aside the strong circumstantial evidence of meaning discussed above, it is certainly true, at a minimum, that section 301 does not "clear[ly] and definite[ly]" encompass LDDD and Paired Exchanges, as distinct from "purchases" or other transfers for a profit.

For all of the above reasons, the donative practices you have described do not violate section 301.

C. KEVIN MARSHALL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*